**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| BRIAN SETENCICH,<br><br>             Plaintiff,<br><br>   v.<br><br>THE AMERICAN RED CROSS, a non-profit corporation; STEVE BROWN; ROBERT BROWNING; and DOES 1 through 30, inclusive,<br><br>             Defendants. | No.  C 07-03688 SBA<br><br>**ORDER**<br><br>[Docket Nos. 29-31] |

## INTRODUCTION

Before the Court is defendant The American Red Cross' Motion to Dismiss Plaintiff Brian Setencich's First Amended Complaint [Docket No. 29], defendant Steven Brown's Motion to Dismiss Plaintiff Brian Setencich's First Amended Complaint [Docket No. 30], and defendant Robert Browning's Motion to Dismiss Plaintiff Brian Setencich's First Amended Complaint [Docket No. 31].

Plaintiff Brian Setencich has sued each defendant for association discrimination under the California Fair Employment and Housing Act (FEHA), California Government Code section 12900, *et seq.*, and for fraud and negligent misrepresentation.  Each defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(6).  The Court finds this matter is appropriate for resolution without a, hearing under Fed. R. Civ. P. 78(b), and for the reasons discussed below, GRANTS and DENIES the defendants' motions, as follows:

(1) the Court DENIES the Red Cross' motion on Setencich's first claim for association discrimination under the FEHA;

(2) the Court GRANTS Steve Brown's motion and Robert Browning's motion on Setencich's first claim for association discrimination under the FEHA with prejudice;

(3) the Court GRANTS the Red Cross', Steve Brown's, and Robert Browning's motions on Setencich's second claim for fraud, without prejudice; and

1        (4)    the Court DENIES the Red Cross', Steve Brown's, and Robert Browning's motions on Setencich's third claim for negligent misrepresentation.

## BACKGROUND[1]

### 1. Factual History

Defendant The American Red Cross (the "Red Cross") is a non-profit corporation, authorized to do business in the State of California. Docket No. 28 (First Am. Compl., ¶ 4). At the time plaintiff Brian Setencich filed his First Amended Complaint, on November 8, 2007, defendant Steve Brown was the Vice President of the Red Cross' Western Region. *Id.* at 1, ¶ 5. And, at this time, defendant Robert Browning was its Director of Human Resources. *Id.*

In mid- to late-2005, defendants recruited Setencich to work as the Communication Manager for the Red Cross' Blood Services, Western Region, Division because of his excellent communication skills and extensive experience in working with the public. *Id.*, ¶¶ 2, 14. He was a perfect fit and filled an important need for the Red Cross. *Id., ¶* 2. In the recruited position he would have been working directly for Marc Jackson, Red Cross' Director of Public Affairs and Communications. *Id.*

Setencich interviewed in Southern California and met with decision-makers on approximately three occasions. *Id.*, ¶¶ 15, 24. He received positive reviews from the hiring panel and decision-makers. *Id., ¶* 15. Defendants made specific representations it intended to hire him: During his first visit, he told defendants he had been convicted of filing a false tax return in 1997, where he failed to pay taxes on a stock dividend from TCBY Yogurt, with tax consequences less than $10,000. *Id.*, ¶ 24. Defendants told Setencich a criminal conviction was not an impediment to hire and numerous individuals with convictions had been hired in the past. *Id.*

Also, in June, 2005, the Human Resource Representative who reviewed Setencich's application and written statement describing the criminal conviction informed Setencich the conviction would not stop his hire. *Id.*, ¶ 25. And, in late 2005, Brown took him aside, put his arm

---

[1]The facts are taken from plaintiff Brian Setencich's First Amended Complaint. [Docket No. 28.]

around him and told him: they had worked with people with criminal backgrounds before; they liked to give people second chances; they hire people for what they can bring to the table; and, they wanted to hire him. *Id.* Brown reiterated this to Setencich in around March, 2006. *Id.* Browning also told him his criminal background would not impede his hire. *Id.* These statements were republished to him and others, confirming he would be hired, until around the summer of 2006. *Id.* Defendants were lying and knew they were lying, when they made these statements. *Id.*, § 26.

Jackson found plaintiff the most qualified for the position, as did those on the hiring panel. *Id.*, ¶ 16. The decision was made to hire him. *Id.* Defendants, however, attempted to withdraw the decision, when they learned of his association with Jackson. *Id.*, ¶¶ 8, 15, 17.

Jackson's and Setencich's association had begun in the early 1990s when Setencich was on the Fresno City Counsel and Jackson was the Director of Public Relations and Editor in Chief for the Metro News. *Id.*, ¶ 6. They worked on several issues together, and learned they worked well together. *Id.* Then, in 1994, Setencich was elected State Assemblyman for the 30th District and made Jackson his Chief of Staff. *Id.* In 1997, when Setencich became Special Liaison to the Mayor of San Francisco, Jackson began working for defendants, in Southern California. *Id.*, ¶ 7.

A director for them since 1997, Jackson he had won a multitude of national awards for the work he had performed for the Red Cross. *Id.*, ¶ 3. When defendants, however, learned of his psoriatic arthritis, a chronic condition protected under the FEHA, they discriminated against him, denied him a reasonable accommodation, and attempted to force him to quit. *Id.* In addition, they began retaliating against him due to his protected activities, including protesting their illegal conduct. *Id.* Jackson thus needed the assistance of a Communication Manager to accommodate not only his disability, but the growth of his department and to counter defendants' attempts to undermine him and set him up to fail. *Id.*, ¶ 16.

This is because defendants were attempting to force Jackson out, given his use of family medical leave, disability, and protected activity. *Id.*, ¶ 15. *Id.*, ¶ 8. Thus, instead of hiring

///

///

///

3

Setencich, defendants articulated a pretextual reason for not doing so.[2]  *Id.*, ¶ 17.  Instead, they hired other convicted felons and used them for their ads and campaigns.  *Id.*, ¶ 26.

## 2.    Procedural History

Setencich discovered defendants had defrauded him, around September 2006.  *Id.*, ¶ 27.  At some point, he filed a claim with the California Department of Fair Employment and Housing.[3]  *Id.*, ¶ 12.  On March 13, 2007, he sued the Red Cross, Brown, and Browning, in San Francisco Superior Court, in case number 07-461264.  *See* Docket No. 1 (Notice of Removal).  On July 19, 2007, the Red Cross removed the case to this Court, under 36 U.S.C. § 300105.[4]  *Id.*  On July 24, 2007, the Red Cross filed a motion to dismiss [Docket No. 9], which was mooted, when Setencich filed a First Amended Complaint [Docket No. 28], on November 8, 2007.  Docket No. 36 (Order).

In this amended pleading, he claimed due to defendants' conduct, intentional, malicious, or otherwise, he suffered humiliation, severe anxiety, physical ailments due to stress, mental anguish, extreme mental and emotional distress, medical expenses, and lost earning capacity, compensation, and health and welfare benefits.  *Id.*, ¶¶ 19, 21-22, 28-29.  Their conduct also caused him to avoid seeking other employment.  *Id.*, ¶ 28.  As a result, he sought compensatory and punitive damages, as well as fees and costs.  Id., ¶¶ 21, 28-30, 34-35, at 6-7.

Then, on November 27, 2007, defendants each filed a motion to dismiss the first amended complaint.  [Docket Nos. 29-31.]

///

///

---

[2]    Setencich, however, does not share it with the Court.

[3]    Presumably, he received a right-to-sue notice, or waited the statutorily mandated time before suing, without any action by the DFEH.

[4]    Title 36 U.S.C. § 300105(a)(5) provides the Red Cross has the power to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States."  The Supreme Court has interpreted this provision in The American National Red Cross' federal corporate charter as conferring "original jurisdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending."  *American Nat'l Red Cross v. S.G. & A.E.*, 505 U.S. 247, 248 (1992); *see also K.V. Mart Co. v. United Food & Commercial Workers Int'l Union*, 173 F.3d 1221, 1224 (9th Cir. 1999) (per curiam); *Williams v. Leonard*, 2003 WL 163183, at *1 (N.D. Cal. 2003).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). Conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences, however, are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). If dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 546 U.S. 1172 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

**1.  Setencich has stated an association discrimination claim under the California Fair Employment and Housing Act, against the Red Cross.**

**A.  Allegations**

The Red Cross alleges while it is undisputed the FEHA prohibits discrimination based on association, the occasional and temporary business or social interactions between Setencich and Jackson are not the type of associations anti-discrimination statutes were aimed to protect. Red Cross ("RC") Mot. at 3:3-5. The Red Cross relies on *Larimer v. International Bus. Machs. Corp.*, 370 F.3d 698,700 (7th Cir. 2004), which appears to hold, under the Americans with Disabilities Act, association discrimination is shown by a marital, romantic, domestic partner, or blood relationship, which Setencich does not plead in regards to Jackson. RC Mot. at 3:5-19. Setencich counters the FEHA's protections exceed the ADA's. Docket No. 42 (Pl.'s Opp'n to RC, part III.B.) The Red Cross replies by noting California courts find cases under the ADA useful in construing cases under the FEHA. Docket No. 49 (RC Reply at 3:7-24).

In addition, the Red Cross claims it defies logic for Setencich to claim the Red Cross was making a concerted effort to fill the Communication Manager position to assist Jackson, but then did

not hire him, because it was discriminating against him for his association with, and ultimately in order to punish, Jackson, because of his disability. RC Mot. at 4:3-7.

**B.     Legal Standards**

    **i.     The California Fair Employment and Housing Act**

With regards to discrimination in employment and housing, the California legislature has stated, in the FEHA:

> It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation.

Cal. Gov. Code § 12920, 1st para.; *see Aguilar v Avis Rent A Car, Inc.*, 21 Cal.4th 121, 129, 87 Cal.Rptr.2d 132, 980 P.2d 846 (1999).

Further, "[t]he provisions of this part shall be construed *liberally* for the accomplishment of the purposes of this part."[5]  Cal. Gov. Code, § 12993(a); *see Aguilar*, 29 Cal.4th at 129.  And, "nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code [the Unruh Act]."[6]  Cal. Gov. Code, § 12993(c).

The FEHA itself provides:

> It shall be an unlawful employment practice ...:
>
> (a) For an employer, because of the race, religious creed, color, national origin, ancestry, *physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation* of any person, to *refuse to hire or employ the person* ....

*Id.* § 12940 (emphasis added).

///

---

[5] The term "part" refers to the FEHA, which is contained in part 2.8 of division 3 of title 2 of the California Government Code.

[6] *See supra* note 5.

In 1980, the California Legislature amended the FEHA to incorporate the Unruh Act, California Civil Code section 51, *et seq.* It added section 12948 which stated, "It is an unlawful practice under this part for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51 ... of the Civil Code." 1980 Cal. Stats., ch. 992, sec. 4.

In 1999, the legislature expressly amended the FEHA to bar "association discrimination." It stated the terms "'[r]ace, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation' includes a perception that ... the person is associated with a person who has, or is perceived to have, any of those characteristics." *Id.* § 12926(m).

When the legislature added subdivision (m), it stated, "The amendments made by this act to ... Sections 12926 ... of the Government Code do not constitute a change in, but are *declaratory of existing law*." 1999 Cal. Stats, ch. 591, sec. 16 (emphasis added).

With regards to the relationship between the FEHA and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the California Legislature has stated:

> The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990 (Public Law 101-336). *Although the federal act provides a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections.*

Cal. Gov. Code § 12926.1(d) (emphasis added).

### ii. The Unruh Act

Section 51 of the California Civil Code states, in part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, medical condition,* marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b) (emphasis added).

1  The legislature added the terms "blindness or other physical disability" to this section in
2  1987, 1987 Cal. Stats. 1987, ch. 159, sec. 1, but in 1992, changed them to "disability," stating:

> It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and *to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990.*

1992 Cal. Stats., ch. 913, secs. 1, 3 (emphasis added).

In 2000, the legislature added certain FEHA definitions to the Unruh Act, e.g., under this act, "disability" means any mental or physical disability as defined in sections 12926 and 12926.1 of the Government Code, and "medical condition" has the same meaning as defined in subdivision (h) of section 12926 of the Government Code. Cal. Gov. Code § 51(e)(1)-(2); 2000 Cal. Stats., ch. 1049, sec. 2.

Likewise, as of 2000, the Unruh Act *expressly prohibits association discrimination.* Under the act, the terms:

> "[s]ex, race, color, religion, ancestry, national origin, *disability, medical condition*, marital status, or sexual orientation" includes a perception that ... the person is associated with a person who has, or is perceived to have, any particular characteristic or characteristics within the listed categories.

Cal. Civ. Code § 51(e)(5); 2000 Cal. Stats., ch. 1049, sec. 2.

Long before these express amendments, however, California courts construed the Unruh Act as broadly prohibiting association discrimination. In 1991, in *Harris v. Capital Growth Investors XIV*, the California Supreme Court reiterated an earlier 1970 decision, where:

> petitioner entered the Northgate Shopping Center in San Rafael, California, intending to make a purchase. Upon arrival he saw a friend standing on the sidewalk of the shopping center. Petitioner, on a Honda motorcycle belonging to his father, pulled up to the curb and proceeded to talk with this young man, who wore long hair and dressed in an unconventional manner.

*In re Cox*, 3 Cal.3d 205, 212, 474 P.2d 992 (1970).

After one of the men purchased a drink, and sat down on a public bench, police arrested both of them for trespass, for refusing to leave when asked. *Id.* at 210. One of the men challenged his arrest under the Unruh Act. *Id.* at 209. "We held that a shopping center did not have the right to exclude the customer *based only on his association with a young man 'who wore long hair and dressed in an unconventional manner.'*" *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1152, 805 P.2d 873 (1991) (emphasis added).

The California Appellate Court applied the *Cox* holding in *Winchell v. English*, 62 Cal.App.3d 125, 133 Cal.Rptr. 20 (1976), finding operators of a mobile home court had illegally discriminated against plaintiffs and their tenants, when they subrented space to, and associated with, "persons of the black race." The Court noted the act "refers ... to *any discrimination on account of color ... [and was] not limited in ... operation to the color (or other feature) of the person who is the immediate object of the discrimination.*" *Id.* at 129 (emphasis added). Thus, the court thus held businesses could not discriminate against "one's right of association on account of the associates' color ...." *Id.* (emphasis added).

As the court also noted:

"The Act is to be given a liberal, and not a strict, construction with a view to effect its object and to promote justice." *Id.* at 128. "As with all statutes, it must be construed in the light of the legislative purpose and design. In enforcing the command of a statute both the policy expressed in its terms, and the object implicit in its history and background, should be recognized." *Id.*

**C.  Analysis**

There are apparently no California cases addressing the issue of disability-based association discrimination or what constitutes an "association" under the FEHA. Based on a review of the relationship between the FEHA, the Unruh Act, and the ADA, however, it is clear, regardless of what the ADA defines as "association discrimination," the FEHA would define Setencich's and Jackson's relationship as an "association."

To state a cause of action under the FEHA, a "plaintiff must generally show that: he or she was a member of a protected class; was qualified for the position he sought; suffered an adverse employment action, and there were circumstances suggesting that the employer acted with a

9

discriminatory motive." *Jones v. R.J. Donovan Corr. Facility*, 152 Cal.App.4th 1367, 1379, 62 Cal.Rptr.3d 200 (2007).

Setencich alleges although he was qualified, the Red Cross refused to hire him because of his association with Jackson, who allegedly is disabled under the FEHA. If Setencich and Jackson have an association, then taking these facts as true, he has stated an association discrimination claim under the FEHA.

Rather clearly, in 1970, the California Supreme Court made it clear, in *In re Cox*, that under the Unruh Act, discrimination based on a mere acquaintance or friendship, could be sufficient to trigger association discrimination. At this time, the Unruh Act did not expressly cover association discrimination. Thus it existed in California, at common law. The *Cox* decision is thus an example of the California courts according the act a broad liberal construction, construed in light of its legislative purpose and design: to prevent arbitrary discrimination by businesses.

Like the Unruh Act, the FEHA is also designed to prevent arbitrary discrimination, but it generally targets employment and housing providers. Nonetheless, it too is subject to a liberal construction to accomplish its purposes. Cal. Gov. Code § 12993(a). Over time, while the Unruh Act and the FEHA have not entirely merged, the California Legislature has evidenced a clear intent to broaden and coordinate their protective operations, such that, by the time the events leading to this suit occurred, both acts expressly barred association discrimination on the basis of a physical disability, *see* Cal. Civ. Code § 51(e)(5); Cal. Gov. Code §§ 12940(a), 12962(m), and both were designed to provide greater protections than the ADA, *see* 1992 Cal. Stats., ch. 913, secs. 1, 3; Cal. Gov. Code § 12926.1(d). In addition they used a shared definition of a "physical disability," Cal. Civ. Code § 51(e)(1), and a violation of the former was a violation of the latter, Cal. Gov. Code § 12948. Most importantly, when the legislature added the express provision to the FEHA, barring association discrimination, it was considered declaratory of *existing law*. 1999 Cal. Stats, ch. 591, sec. 16.

Thus, when the FEHA was amended to add an express provision covering association discrimination, it included and incorporated prior law in this area, including case law developed under the Unruh Act. Thus, under the California Supreme Court's reasoning in *Cox*, Setencich and

Jackson need only be friends or acquaintances, to claim "association" discrimination under the FEHA. According to Setencich, he and Jackson knew each other well for four years, before Jackson worked for three years as Setencich's chief of staff. They clearly have a closer relationship than the two men in *Cox*, and thus can claim association discrimination.

To hold otherwise, given the intertwined nature of the two acts, would be to argue a restaurant could refuse to serve persons outside protected classes, because they sat down to eat with persons in protected classes, or that an employer could refuse to hire a person outside a protected class, solely because he or she had a friend in a protected class. The Red Cross has not pointed the Court to any case law so holding, and would probably be hard pressed to do so.

With regards to the Red Cross' argument that it is illogical for Setencich to argue the Red Cross was hiring someone for Jackson, at the same time it was trying to force him to quit, this is a logical and consistent argument, if the Red Cross were merely engaged in behavior designed to make it appear it were not discriminating against Jackson.

### D. Conclusion

Taking Setencich's facts as true, he has stated a claim for association discrimination under the FEHA, against the Red Cross.

### 2. Setencich has failed to state an association discrimination claim under the California Fair Employment and Housing Act, against Brown or Browning.

Setencich alleges Brown and Browning had supervisory positions with the Red Cross. As Brown and Browning note, under the FEHA, plaintiffs may not sue supervisors for discrimination. Cal. Gov. Code § 12940(a) (regulating "employer" conduct); *Reno v. Baird*, 18 Cal.4th 640, 643, 651-54, 957 P.2d 1333 (1998) (discrimination claims often arise from conduct indistinguishable from common, everyday personnel decisions, and imposing liability for them would chill effective management, without aiding in victims' recovery); Docket No. 30 (Brown Mot. at 3:1-22); Docket No. 29 (Browning Mot. at 3:1-23). Setencich does not oppose dismissal on this ground. Docket No. 43 (Pl.'s Opp'n to Brown at 1:24-26); Docket No. 41 (Pl.'s Opp'n to Browning at 1:24-27). As the parties agree, Setencich has failed to state an association discrimination claim under the FEHA, against Brown or Browning.

11

**3.    Setencich has failed to state a claim for fraud.**

  **A.    Allegations**

  The Red Cross claims Setencich has failed to comply with Federal Rule of Civil Procedure 9,[7] by not providing "how, when, where, to whom and by what means" allegedly false statements were made. RC Mot. at 4:15-5:4. It also claims Setencich has not shown any defendant agreed or promised to hire him. *Id.* And, it alleges the fact it did not hire Setencich, absent further facts, which he does not plead, does not support a claim it made a promise to hire him, on which he could reasonably rely. *Id.* at 5:5-11. Brown's and Browning's oppositions are similar. *See* Brown Mot., part III.C; Browning Mot., part III.C.[8]

  Setencich opposes by generally claiming he has complied with Rule 9, and citing portions of his first amended complaint, in support. Opp'n to RC, part III.C.

  **B.    Legal Standards**

  In California, "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709. Stated another way, "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996) (citing 5 Witkin, Summary of Cal. Law, Torts, § 676, p. 778 (9th ed. 1988)).

  A deceit, within the meaning of section 1709, is either:

///

---

[7] Setencich initially filed in San Francisco Superior Court, and the Red Cross removed, so Rule 9 would have been inapplicable to his initial complaint; however, he filed his First Amended Complaint, after removal, thus subjecting it to the Federal Rules of Civil Procedure's pleading requirements.

[8] Browning and Brown also argue, however, the fraud claim is pre-empted by the FEHA, as both claims arise from the same facts, and as they are immune from the latter, they must be immune from the former, Browning Mot. at 5:1-6; Brown Mot. at 4:27-5:4. They cite no legal authority for this conclusion, however, apparently declining to actually research this topic for their motions. For his part, Setencich does not address their preemption argument, either. *See* Opp'n to Brown, part III.C; Opp'n to Browning, part III.C. The Court also declines the opportunity to consider a topic not briefed by the movants.

   1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

   2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

   3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

   4. A promise, made without any intention of performing it.

Cal. Civ. Code § 1710.

Subdivision (4) of section 1720 is known as "promissory fraud." *Lazar*, 12 Cal.4th at 638.

In cases of fraud, Rule 9 requires, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[9]

> [A] pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer. This notice requirement is satisfied by allegations of the time, place and nature of the alleged fraudulent activities. When a fraudulent statement is alleged, the plaintiff must set forth what is false or misleading about [the] statement, and why it is false. In other words, the plaintiff must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made.

*Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) (citations, quotations marks, and emphasis omitted).

With respect to scienter, a plaintiff only need say it existed, e.g., "defendant knew his statement was false and misleading." *Id.* at 1082 n.4.

///

///

---

[9] Defendants reference California cases and the California pleading standard for fraud, *see*, *e.g.*, RC Mot. at 4:22-28, but the procedural pleading standard applicable here is Rule 9(b).

13

**C.     Analysis**

In this case, Setencich has almost pled a fraud claim under sections 1709 and 1710(1) of the California Civil Code, but fails to provide one critical piece of information: When did defendants learn of his association with Jackson? Setencich's story is that Red Cross agents recruited him in mid- to late-2005 for a Communications Manager position. He interviewed three times in Southern California. He went down there based on their continued invitation to do so, and the positive feedback he received from them.

More specifically, the agent who reviewed his application told him his criminal conviction was not an absolute barrier to employment. Brown made similar statements to Setencich in late 2005 and March 2006. Browning also told him this, though the time period is not indicated. Because he relied on defendants' representations, he did not look for other employment opportunities.

Defendants make much of the fact that Setencich fails to detail proof he was *promised* a position. Defendants have a point. The statements noted by Setencich, in paragraphs 24 and 25 of his First Amended Complaint, fall into two groups. The first only indicates he is a viable candidate, e.g., defendants "wanted" to hire plaintiff, or his conviction was not a barrier to hire; but, they do not indicate an offer of employment. First Am. Compl., ¶¶ 24-25. The second group indicates defendants had offered him employment, e.g., they "intended" to hire him, or they confirmed he would be hired. *Id.* The second group, however, lacks the particularity called for by Rule 9(b), as discussed below. Thus, Setencich fails to make a case for promissory fraud.

Nonetheless, he does raise another basis for fraud: If defendants told Setencich he was a possible candidate, when in fact they knew he was not, due his association with Jackson, but they wanted to string him along, and kept bringing him back for interviews, knowing he would come if asked, which would have been reasonable response on his part, and due to which he lost economic opportunities, then Setencich could state a claim for fraud.

Here, however, Setencich has not stated a claim for fraud. He alleges when defendants made statements to him regarding his criminal conviction, they were lying, and they knew they were lying, as they did not intend to hire him, *due to his association with Jackson*. *Id.*, ¶ 26. He also alleges,

14

however, defendants decided to hire him, but then attempted to withdraw the decision, *after learning of his association with Jackson*.[10] *Id.*, ¶¶ 15, 17.

Problematically, Setencich never identifies when defendants or which of them learned of his association with Jackson. For example, when defendants found out, they allegedly attempted to withdraw their hiring decision. It is unclear, however, whether this means Brown and Browning learned of this information before or after they discussed his criminal conviction with him. If after, then they could not have intentionally deceived him.

Thus, under Rule 9(b), without this information, his first amended complaint fails to provide sufficient information of any fraud, to which defendants could answer. Nonetheless, because it is not clear this claim could not be saved by any amendment, it will be dismissed without prejudice. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 546 U.S. 1172 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

**D.    Conclusion**

Because he has failed to identify when defendants learned of his association with Jackson, Setencich has failed to state a claim for fraud.

**3.    Setencich has stated a claim for negligent misrepresentation.**

**A.    Allegations**

The Red Cross alleges Setencich's pleadings are too uncertain, fail to allege any induction of reliance, and focus on future promises, instead of past or existing factual representations. RC Mot. at 5:24-6:8. Brown and Browning make the same arguments. Brown Mot. at 5:18-6:2; Browning Mot. at 5:20-6:3. Setencich argues defendants said they wanted to hire him, and they confirmed as such, and told others as such, inducing him to forego other opportunities. Pl.'s Opp'n to RC at 8:5-16; Pl.'s Opp'n to Brown at 5:25-6:8; Pl's Opp'n to Browning at 6:17-28.

**B.    Legal Standard**

The tort of negligent misrepresentation does not require scienter or intent to defraud. (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 487-488, 275 P.2d 15.) It

---

[10] It is unclear what Setencich means by "attempted" and by "withdrew." Apparently, defendants were successful in their "attempt," but from whom did they withdraw the hire decision?

1  encompasses "[t]he assertion, as a fact, of that which is not true, by one who has no
2  reasonable ground for believing it to be true" (Civ.Code, § 1710, subd. 2), and "[t]he
3  positive assertion, in a manner not warranted by the information of the person making
4  it, of that which is not true, though he believes it to be true" (Civ.Code, § 1572,
5  subd. 2; *see Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962, 226 Cal.Rptr. 532
6  [describing elements of the tort] ).

*Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 174-75, 65 P.3d 1255 (2003).

Justifiable reliance may take the form of acting or not acting, in reliance on a misrepresentation. *Id.* at 175.

Unlike a fraud claim, a negligent misrepresentation claim is not subject to Rule 9(b), only to Rule 8, *In re Daou Systems, Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005), which only requires:

(a) Claim for Relief.  A pleading that states a claim for relief must contain:

  (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

  (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

  (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

As the United States Supreme Court has held:

[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 103 (1957) (footnote omitted).

///

///

**C.    Analysis**

Based on the facts, which will not be repeated in detail, Setencich is alleging defendants told him he was in the running for a position, when in fact they had no reasonable basis to believe as such, and in reliance on their statements, he reasonably agreed to submit to a lengthy interview process, foregoing other employment opportunities, to his detriment. Although, for the reasons noted in discussing his fraud claim, Setencich's negligent misrepresentation claim is not the most artfully pled one, under the more liberal pleading standard applied under Rule 8, as opposed to Rule 9's higher standard for fraud, this claim exhibits sufficient certainty, such that defendants can respond to it with denials or admissions. Thus, Setencich has stated a claim for negligent misrepresentation.

**D.    Conclusion**

Setencich has stated a claim for negligent misrepresentation.

**CONCLUSION**

Accordingly, with regards to the motions, the Court orders:

(1) the Red Cross' motion on Setencich's first claim for association discrimination under the FEHA is DENIED;

(2) Steve Brown's motion and Robert Browning's motion on Setencich's first claim for association discrimination under the FEHA is GRANTED, and these claims are dismissed with prejudice;

(3) the Red Cross', Steve Brown's, and Robert Browning's motions on Setencich's second claim for fraud is GRANTED, and these claims are dismissed without prejudice; and

(4) the Red Cross', Steve Brown's, and Robert Browning's motions on Setencich's third claim for negligent misrepresentation are DENIED.

The Court also orders that Setencich shall have until **March 6, 2008** to file and serve a Second Amended Complaint. All defendants shall then have until **March 26, 2008** to file and serve a responsive pleading to Setencich's Second Amended Complaint.

The Court also orders that the Case Management Conference previously scheduled for February 12, 2008 at 1:00 p.m. shall be continued to **April 30, 2008 at 2:30 p.m.** The parties shall

1  **meet and confer** prior to the conference and shall prepare a joint Case Management Conference
2  Statement which shall be filed no later than ten (10) days prior to the Case Management Conference
3  that complies with the Standing Order for all Judges of The Northern District of California and the
4  Standing Order of this Court.  Plaintiff(s) shall be responsible for filing the statement as well as for
5  arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the
6  above indicated date and time.

7     IT IS SO ORDERED.

8     February 14, 2008                              _____
9                                                    Saundra Brown Armstrong
                                                     United States District Judge