RONALD J. KLEPETAR, Bar No. 52535
SABRINA L. SHADI, Bar No. 205405
BAKER & HOSTETLER LLP
12100 Wilshire Boulevard, 15th Floor
Los Angeles, CA  90025-7120
Telephone:     310.820.8800
Facsimile:      310.820.8859
Email:          rklepetar@bakerlaw.com
Email:          sshadi@bakerlaw.com

Attorneys for Defendant
AMERICAN RED CROSS BLOOD SERVICES
SOUTHERN CALIFORNIA REGION, Improperly
Sued As The American Red Cross and STEVE
BROWN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SETENCICH,<br><br>        Plaintiff,<br><br>    v.<br><br>THE AMERICAN RED CROSS, a non-profit corporation, STEVE BROWN, ROBERT BROWNING and DOES 1 through 30, inclusive,<br><br>        Defendants. | Case No.  C07-03688 SBA<br><br>[Honorable Bernard Zimmerman]<br><br>**OPPOSITION OF AMERICAN RED CROSS BLOOD SERVICES SOUTHERN CALIFORNIA REGION TO PLAINTIFF BRIAN SETENCICH'S MOTION TO COMPEL DEFENDANT AMERICAN RED CROSS' FURTHER RESPONSES TO DEMAND FOR PRODUCTION**<br><br>**Trial Date:  January 12, 2009**<br>**Complaint filed:  March 13, 2007** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

077975, 000039, 501906712.5

1

**TABLE OF CONTENTS**

2

3    I.    INTRODUCTION ...................................................................................................... 2

4    II.   FACTUAL BACKGROUND REGARDING PLAINTIFF'S CASE ................................ 3

5    III.  BURDEN ON MOVING AND RESISTING PARTIES ...................................................... 3

6    IV.   DISPUTED DISCOVERY ............................................................................................ 4

7          A.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 1

8                1.    The Documents Requested Pursuant to Plaintiff's Request

9                      For Production No. 1 Should Remain Protected ......................................... 4

10         B.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 2 ........................................ 8

11               1.    ARC Will Agree To A Protective Order ..................................................... 8

12         C.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 8 ........................................ 8

13               1.    Factual History of Privileged Material ........................................................ 9

14               2.    Communication Of In-House Counsel Are Protected By

15                     The Attorney-Client Privileged If The Communication Were

16                     Made For The Purpose Of Obtaining Or Providing

17                     Legal Advice ............................................................................................ 9

18               3.    The Work Product Doctrine Protects Material Prepared

19                     In Anticipation Of Litigation ................................................................... 10

20         D.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 20 ................................... 11

21               1.    ARC Has Provided A Privilege Log For Request For

22                     Production No. 20 ................................................................................... 11

23         E.    FURTHER DEPOSITIONS OF STEVE BROWN AND

24               ROBERT BROWNING ...................................................................................... 12

25   V.    CONCLUSION .......................................................................................................... 12

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

077975, 000039, 501907881.1

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

4

<u>Pages</u>

*In re Sulphuric Acid Antitrust Litigation*, 231 F.R.D. 331 (N.D. Ill. 2005)...................................... 3

5

*Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281 (C.D. Cal. 1998)............................................ 4,5

6

7

*Tucker v. Fischbein*, 237 F.3d 275 (3rd Cir. 2001) ........................................................ 10

*U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........................................ 9

8

*U.S. v. Nobles*, 422 U.S. 225 (1975) ............................................................................ 10

9

**STATE CASES**

10

*Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991) ................................................ 6

11

*In re Cox*, 3 Cal. 3d 205 (1970) ................................................................................ 6

12

*Winchell v. English*, 62 Cal. App. 3d 124 (1976) ............................................................ 6

13

**FEDERAL STATUTES**

14

Fed. R. Civ. P. 26 ......................................................................................................... 4,5

15

16

**STATE STATUTES**

Cal. Gov't Code § 12926(m) ....................................................................................... 5

17

Cal. Gov't Code § 12940(a)......................................................................................... 5

18

**SECONDARY SOURCES**

19

Moore's Federal Practice ............................................................................................ 5

20

21

22

23

24

25

26

27

28

077975, 000039, 501907854.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **I.    INTRODUCTION**

2    Plaintiff Brian Setencich ("Plaintiff") requests that ARC produce documents that are

3    purportedly "essential for Plaintiff to prove his claim of association discrimination." (Pl. Mot. to

4    Compel, 2:11:12). In good faith, ARC has produced all documents responsive to the Requests for

5    Production listed in the Motion to Compel, except for Request for Production No. 1, which seeks

6    documents that are not relevant and thus not, "reasonably calculated to lead to the discovery of

7    admissible evidence" pursuant to Federal Rule of Civil Procedure Rule 26(b)(1) ("Rule 26(b)(1)")

8    and Requests for Production Nos. 8 and 20 which seek documents which are properly protected

9    by the attorney-client privilege and/or work product doctrine.

10    The documents sought pursuant to Request for Production No. 1 include files prepared

11    over one year after ARC decided not to hire Plaintiff and in connection with an investigation of

12    Marc Jackson ("Jackson"), an ARC employee who is represented by Plaintiff's counsel in a

13    Charge of Discrimination that Jackson made with the California Department of Fair Employment

14    and Housing ("DFEH"). Plaintiff's efforts to compel the production of documents related to an

15    internal investigation of Jackson appear to be an inappropriate attempt to use the present case to

16    conduct discovery for Jackson's unfiled case, regardless of the irrelevance of the details of the

17    investigation to Plaintiff's claims. Plaintiff's overreaching tactics should not be permitted, and

18    the Motion to Compel should be denied.

19    With regard to documents responsive to Requests for Production Nos. 8 and 20 which are

20    being withheld on the bases of privilege and/or work-product, these items reflect communications

21    between ARC managers and ARC's in-house counsel regarding the scope of ARC's obligation to

22    provide accommodations for Jackson's disability (an issue which ARC maintains is also

23    irrelevant to this suit), counsel's opinions and recommendations related to that obligation and

24    communications created in anticipation of litigation. Plaintiff has not provided a sufficient basis

25    to require ARC to disclose these communications; therefore, his request for an order that they be

26    disclosed should be denied.

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

077975, 000039, 501906712.5

ARC'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
C07-03688

1    **II.    FACTUAL BACKGROUND REGARDING PLAINTIFF'S CASE**

2            On or about June 1, 2005, Plaintiff submitted an application for employment to ARC

3    based on a referral from Jackson, his former colleague who had worked on Plaintiff's campaign

4    and as his chief of staff when Plaintiff became a member of the California State Assembly.

5    Jackson was ARC's Director of Communications when Plaintiff applied to work at ARC, and he

6    is currently employed as its Director of Public Affairs and Communication of Blood Services for

7    the West Division.

8            During the application process, Plaintiff informed ARC personnel that he had been

9    convicted in 2000 of the felony of filing a false tax return in 1997 (Pl. First Am. Compl. ¶ 24).

10   On July 1, 2005, Division Vice President Steve Brown ("Brown") advised Jackson by e-mail that

11   ARC would not hire Plaintiff for the Communications Manager position due to his felony

12   conviction.  On February 21, 2006, Brown reiterated ARC's decision not to hire Plaintiff in an e-

13   mail to Mr. Jackson.

14           In late January, 2007, more than a year after ARC had decided that it was not going to hire

15   Plaintiff for the Communications Manager position, ARC conducted an internal investigation of

16   Mr. Jackson's workplace conduct based on complaints it had received from his subordinates.  On

17   March 14, 2007, Jackson filed a Charge of Discrimination against ARC with the DFEH for

18   discrimination relating to the disciplinary action ARC had taken and requested an immediate right

19   to sue.  Counsel for Plaintiff, Jill Telfer, represents the rights and interests of Mr. Jackson in his

20   DFEH action.  On March 13 2007, Ms. Telfer filed a complaint against ARC for association

21   discrimination on behalf of Plaintiff.  On March 6, 2008, Ms. Telfer filed a second DFEH charge

22   on behalf of Jackson, again seeking an immediate right to sue.

23   **III.    BURDEN ON MOVING AND RESISTING PARTIES**

24           On a motion to compel discovery, the moving party must demonstrate actual and

25   substantial prejudice from the denial of discovery.  *In re Sulphuric Acid Antitrust Litigation*, 231

26   F.R.D. 331, 339 (N.D. Ill. 2005); Willam W Schwarzer, A. Wallace Tashima & James M.

27   Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial, § 11:2379.1 (2007).

28   Plaintiff has failed to meet this burden as Plaintiff has not offered any evidence to show that he

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    will suffer actual and substantial prejudice from denial of the documents he requests. Here

2    Plaintiff relies on the assumption that in order to establish the elements of an association

3    discrimination claim, he must establish that there was a discriminatory animus against Jackson

4    because of his disability.[1] Not only has Plaintiff provided no support for this assumption, even if

5    it were correct, there is no evidence that ARC held a discriminatory animus against Jackson at the

6    time it made the decision not to hire Plaintiff, and that hiring decision is too remote in time and

7    otherwise removed from the issues surrounding its investigation of complaints made regarding

8    Jackson's workplace misconduct to make the latter a proper topic of discovery in *this* action.

9        ARC's burden is to demonstrate that the discovery it opposes should not be allowed and to

10    clarify, explain, and support its objections. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283

11    (C.D. Cal. 1998). ARC meets this burden with the analysis provided herein.

12    **IV.    DISPUTED DISCOVERY**

13        **A.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 1:**

14        *Any and all documents which make up the Investigative file(s) referenced in Marc*

15    *Jacobson's Performance Improvement Plan of February 22, 2007, including but not limited to*

16    *interview notes, the investigator's report, documents gathered, and documents referencing any*

17    *complaint against Marc Jackson.*

18        **SUMMARY OF ARC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

19        ARC maintains that this request seeks documents which are not relevant and not

20    reasonably calculated to lead to the discovery of admissible evidence.

21           **1.    The Documents Requested Pursuant To Plaintiff's Request For**

22           **Production No. 1 Should Remain Protected**

23               a)    Rule 26(b)(1) Limits Discovery to Matters Relevant to a Party's

24                  Claim or Defense

25        Rule 26(b)(1) states, in pertinent part, as follows: "Parties may obtain discovery regarding

26    any nonprivileged matter that is *relevant* to any party's *claim or defense* … Relevant information

---

27    [1] Ms. Telfer states in her May 27, 2008 letter to the Court that "it is undisputed that Setencich was qualified for the

28    job." While not pertinent to the analysis in this brief, it should be noted that ARC does dispute that Setencich was qualified for the job.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

2    discovery of admissible evidence." (emphasis added).  Prior to the adoption of the 2000

3    amendments to Rule 26, relevance was broadly and liberally construed for discovery purposes to

4    include any information that may be relevant to the subject matter of an action.  James WM.

5    Moore, Moore's Federal Practice, § 26.41[6][b] (2008); *See, e.g., Oakes v. Halvorsen Marine*

6    *Ltd.*, 179 F.R.D. at 283 (commenting that a request for discovery should be considered relevant if

7    there is "any possibility" that the information sought may be relevant to the subject matter of an

8    action).  As the present language of Rule 26(b)(1) establishes, without an order of the court,

9    parties may obtain discovery only of nonprivileged matters relevant to a party's claim or defense.

10   Rule 26(b)(1) was narrowed as a means of involving the court "more actively in regulating the

11   breadth of sweeping or contentious discovery."  Fed. R. Civ. P. 26 advisory committee's note.

12   Pursuant to the 2000 amendments, the parties and the courts are meant to "focus on the actual

13   claims and defenses involved in the action." *Id.*

14                    b)        Plaintiff's Request for Production No. 1 Is Not Focused on

15                              Plaintiff's Association Discrimination Claim Or ARC's Defenses

16               In order to establish his cause of action for *association* discrimination, Plaintiff must

17   prove that ARC "refuse[d] to hire" Plaintiff "because" he "is associated with a person who has, or

18   is perceived to have [a disability]." *See* Cal Gov't Code §§ 12926(m) and 12940(a).  As the

19   relevant provisions of the Fair Employment and Housing Act ("FEHA") are written, being

20   associated with a person who has a protected characteristic is itself a protected classification.

21   Therefore, in order to prevail on his claim for association discrimination, Plaintiff must establish

22   that it he was associated with a disabled person (which is not disputed for the purposes of this

23   motion) and that there is a causal connection with this association and ARC's decision not to hire

24   him.  In pursuing documents in response to Request for Production No. 1, however, Plaintiff is

25   attempting trying to obtain access to a report of an investigation made in connection with an

26   internal complaint against ARC employee Marc Jackson in the hopes of showing discrimination

27   against Jackson and then asking to the Court to infer that because of its discrimination against

28   Jackson, ARC was discriminating against Plaintiff as well.  Not only has Plaintiff failed to

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

1   provide any legal authority for the proposition that alleged future acts of discrimination against

2   Jackson are relevant to whether Plaintiff's association with Jackson was a motivating factor in the

3   decision not to hire Plaintiff, there is no evidence to indicate that ARC was engaging in

4   discrimination against Jackson in 2005 or 2006 when it was considering Plaintiff's application.

5          The absence of a requirement for Plaintiff to establish ARC's alleged discrimination

6   against Jackson, and thus the lacking relevance of the documents sought by Request for

7   Production No. 1, is reflected in Judge Armstrong's reliance on two California Supreme Court

8   cases in denying ARC's motion to dismiss the association discrimination cause of action.  The

9   Court, as quoted by Judge Armstrong "held that a shopping center did not have the right to

10  exclude the customer *based only on his association with a young man 'who wore long hair and*

11  *dressed in an unconventional manner'.*"  *Harris v. Capital Growth Investors XIV*, 52 Cal.3d

12  1142, 1152 (1991), quoting *In re Cox*, 3 Cal.3d 205 (1970) (Emphasis added in Judge

13  Armstrong's Order, Docket No. 52, p. 9, lines 3-6).  Notably, in exploring whether or not the

14  shopping center properly excluded Cox, the Court did not explore whether the shopping center

15  discriminated against the man "who wore long hair and dressed in an unconventional manner."

16  The Court looked at whether the plaintiff's association with the long-haired young man caused the

17  shopping center to exclude the plaintiff.  Judge Armstrong also cites to the ruling in *Winchell v.*

18  *English*, 62 Cal.App.3d 124 (1976) that a business "could not discriminate against 'one's right of

19  association on account of the associates' color . . . .'"  Again, the focus is placed on the right of

20  association with someone who is a member of a protected class.  Further, as Judge Armstrong

21  described the issue, could "an employer refuse to hire a person outside a protected class, solely

22  because he or she had a friend in a protected class"?  Put in other words, Plaintiff's personal right

23  of action against ARC is for any damage caused by ARC's decision not to hire Plaintiff if that

24  decision was made because he is friends with a disabled person.  Plaintiff does not have a private

25  right of action based on how ARC may interact with Jackson based on his disability.  That right

26  of action belongs only to Jackson, and if he wants to pursue it, he should do so by filing a lawsuit

27  against his employer and deciding with his attorney how to resolve the conflict which would be

28  created by Plaintiff's counsel representing Jackson, who is a managing agent of the ARC;

077975, 000039, 501906712.5                    - 6 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  however, Jackson should not use his friend, this court and this case as a backdoor method to do

2  pre-filing discovery to support his own purported claims, which is exactly what the purpose of

3  Plaintiff's case appears to be.

4    Surely Plaintiff is not taking the position that he would not have a claim and could not

5  establish association discrimination if ARC chose not to hire him because his parent or significant

6  other was disabled or of another race or national origin.  And if that were the case, what discovery

7  and information would be relevant to establishing Plaintiff's claims?  Obviously Plaintiff would

8  not be doing discovery regarding the defendant's interactions with his relative or how his

9  relative's employer treats him or her.  Certainly the essential elements of Plaintiff's cause of

10  action and the rules of discovery do not change just because the person who belongs to a

11  protected class with whom Plaintiff is associated happens to be employed by the defendant.

12    Moreover, even if Plaintiff had established that he needs to show discrimination against

13  Jackson in order to establish a discriminatory animus against Plaintiff, the ARC's investigation of

14  Jackson's workplace conduct in 2007 and ARC's motivation for declining to hire Plaintiff more

15  than a year earlier are too remote in time for the investigative file to be relevant in this action.

16  Specifically, the allegations pled in this case regarding the discriminatory conduct against Jackson

17  are that ARC did not hire Plaintiff or any other person, whose assistance Jackson allegedly

18  needed, and that Jackson was denied a reasonable accommodation in 2005 when, rather than

19  taking the full leave of absence ARC requested he take in connection with his recovery efforts, he

20  requested, after months of being allowed to working mostly from home (to the detriment of ARC

21  and the Communications department), to continue working part time from home.

22    Plaintiff has not established the relevance of the investigative file to Plaintiff's

23  relationship with Jackson or the decision not to hire Plaintiff which allegedly was based on the

24  fact that Plaintiff was associated with a disabled person.  Nor has Plaintiff established how or

25  whether the investigative file relates to ARC's practices relating to hiring convicted felons which

26  is the reason ARC has asserted for not hiring Plaintiff.  Accordingly, Request for Production No.

27  1 does not relate to a claim or defense asserted in this action, and Plaintiff's Motion to Compel

28  the production of documents in response to Request for Production No. 1 should be denied.

077975, 000039, 501906712.5      - 7 -

1    **B.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 2:**

2       *The personnel action forms from January 2000 until January 1, 2008, evidencing any and*

3    *all hire dates for persons who had felony convictions, including but not limited to the documents*

4    *evidency [sic] Angie Turner's rehire as a nurse.*

5       **SUMMARY OF ARC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

6       Without waiving its objections, ARC has created two charts and produced all documents

7    which are responsive to this request.

8       **1.    ARC Will Agree To A Protective Order**

9       ARC's counsel is preparing a stipulated protective order for Plaintiff's counsel to approve

10   in connection with providing the names of the individuals Plaintiff seeks.  Although Plaintiff has

11   sensationalized the circumstances surrounding Angie Turner's 20+ year-old conviction and

12   ignores significant differences between the relationship between Turner's conviction and her

13   blood collection job with ARC (in which her identity is essentially anonymous to members of the

14   public) and the felony fraud conviction of Plaintiff who was a former public figure applying for a

15   role to interact with the media on ARC's behalf, ARC has already produced a Change of Status

16   form to Plaintiff which reflects the individuals who hired Ms. Turner to work for ARC in 2006.

17   ARC has not located a separate "Requisition for Personnel" form such as the one attached to

18   counsel's May 27 Letter as Exhibit B which reflects Ms. Turner's hiring in 2006.  Plaintiff has

19   also produced forms reflecting the hiring of a couple of other individuals with felony convictions

20   during the time period indicated in this request.  There is nothing left for the Court to compel

21   ARC to produce with regard to this request.

22   **C.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 8:**

23      *Any and all documents concerning Marc Jackson's request(s) for reasonable*

24   *accommodation as a result of his medical condition, including but not limited to letters approving*

25   *or denying his request.*

26      **SUMMARY OF ARC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

27      ARC has produced an amended privilege log in response to this request (Exhibit A) and

28   reasserts its position that the documents referenced therein are protected by the attorney-client

077975, 000039, 501906712.5                          - 8 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1     privilege, the work product doctrine, or both.  The items listed in the log were generated either:

2     (1) to obtain or provide advice concerning compliance with the legal obligation to accommodate

3     Jackson's disability pursuant to FEHA or (2) in anticipation of litigation filed by Jackson alleging

4     that ARC failed to accommodate his disability.

5                **1.       Factual History Of Privileged Material**

6           In 2005, Jackson requested that he be able to work from home as an accommodation for

7     his disability.  ARC granted this request.  A few months following this request, concerns arose

8     regarding Jackson and his oversight of the Public Affairs and Communications department which

9     requires a regular management presence.  As a consequence, ARC reviewed Jackson's status to

10    determine whether Jackson was effectively performing the essential functions of his job with the

11    accommodations ARC had provided.  ARC personnel communicated regularly with Christian

12    Hansen in the Office of General Counsel to ensure that they were fulfilling their legal obligations

13    under applicable federal and state law concerning this matter.

14          In February, 2007, ARC issued a Performance Improvement Plan to Jackson arising from

15    complaints within his department concerning his work performance.  Thereafter, it was brought to

16    the attention of ARC management personnel that in response to having received the Performance

17    Improvement Plan, Jackson announced loudly and in front of his subordinates that he was

18    contacting his attorney because he was being "unjustly persecuted".  ARC management personnel

19    interpreted this as a threat that Jackson was going to file a claim against ARC.  A number of

20    communications followed between Chris Hansen and management personnel regarding the

21    litigation that was anticipated to follow from Jackson's conduct.

22                **2.       Communications Of In-House Counsel Are Protected By the Attorney-**

23                          **Client Privilege If The Communications Were Made For The Purpose**

24                          **Of Obtaining Or Providing Legal Advice**

25          Internal communications involving in-house counsel are protected by the attorney-client

26    privilege when the speaker made the communications for the purpose of obtaining or providing

27    legal advice.  *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  Legal

28    advice has been interpreted broadly to mean any advice "rooted in the law."  *Id.*  For example,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    communications regarding the tax consequences of a particular transaction have been deemed to

2    constitute legal advice. *Id.* Communications between in-house counsel concerning potential

3    liability of actions taken in the regular course of business, such as regular communications

4    between reporters for a magazine and in-house counsel for the magazine concerning liability for

5    libel regarding the publication of articles, are made for the purpose of obtaining or providing legal

6    advice and are protected by the attorney-client privilege. *See Tucker v. Fischbein*, 237 F.3d 275,

7    288 (3rd Cir. 2001).

8            Jill Telfer's May 27, 2008 letter to the Court implies that reasonable accommodation is an

9    action taken in the normal course of business and, therefore, communications concerning such are

10   not subject to the attorney-client privilege. The letter states, "merely because ARC's in house

11   counsel must approve of reasonable accommodation does not mean communications with him are

12   privileged." First, Browning did not testify that in-house counsel must approve of reasonable

13   accommodations, but rather that he consulted with in-house counsel to determine whether an

14   accommodation request was reasonable under applicable federal and state law. (See Exhibit B).

15   The reasonable accommodation of a disabled employee pursuant to the ADA or FEHA presents

16   myriad issues "rooted in the law." The specter of litigation looms large in this context.

17   Accordingly, as mentioned above, the reasonable accommodation of Jackson's disability was the

18   subject of numerous communications between Chris Hansen and the employees charged with

19   complying with the legal requirements of providing Jackson a reasonable accommodation. Items

20   1-7, 9, and 10 on the amended privilege log constitute such communications and evidence not

21   only requests and provisions of legal advice but also that litigation was anticipated.

22                    **3.      The Work Product Doctrine Protects Material Prepared In**

23                              **Anticipation Of Litigation**

24           The work product doctrine protects from disclosure documents prepared in anticipation of

25   litigation. *ChevronTexaco* at 1080. The distinct purpose of this doctrine is to shelter "'the mental

26   processes of the attorney, providing a privileged area within which he can analyze and prepare his

27   client's case.'" *Id.* (quoting *U.S. v. Nobles*, 422 U.S. 225, 238 (1975)). Federal Rule of Civil

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Procedure 26(b)(3) protects the "mental impressions, conclusions, opinions, or legal theories" of a

2    party's attorney pursuant to the doctrine.

3        Items 2 and 6-10 on the amended privilege log contain communications from Chris

4    Hansen to various ARC personnel.  All of this correspondence was prepared in anticipation of

5    litigation and all contain Chris Hansen's mental impressions, conclusions, opinions, or legal

6    theories related to anticipated litigation.  All of these items generally address issues of liability

7    concerning reasonable accommodation of Jackson's disability.  Item 8 specifically addresses how

8    ARC should respond to Marc Jackson's outburst in front of his subordinates upon learning that

9    ARC was issuing a Performance Improvement Plan to him.  The outburst included Jackson's

10   public declaration that he needed to call an attorney regarding this matter which raised the specter

11   of litigation.  Accordingly, in addition to being protected by the attorney-client privilege, these

12   items are also protected under the work product doctrine.  Accordingly, Plaintiff's Motion to

13   Compel the production of documents in response to Request for Production No. 8 should be

14   denied.

15          **D.    PLAINTIFF'S REQUEST FOR PRODUCTION NO. 20:**

16        *Any and all witnesses' statements, interview notes, declarations, affidavits, and/or factual*

17   *accounts regarding Plaintiff including, but not limited to, such document generated during any*

18   *and all investigations involving Mark Jackson's complaint(s) of discrimination including, but not*

19   *limited to, investigative documentation.*

20          **SUMMARY OF ARC'S RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

21        ARC has created a privilege log to reflect documents which are responsive to this request,

22   all of which are protected from disclosures all of which are privileged and/or work product.

23          **1.    ARC Has Provided A Privilege Log For Request for Production No. 20**

24        In her May 27, 2008 letter to the Court, Plaintiff's counsel explains that Request for

25   Production No. 20 is not vague, ambiguous or unintelligible, as claimed by ARC because "Brown

26   and Robert Browning testified that an in depth investigation was conducted of Marc Jackson in

27   January 2007 which resulted in the Performance Improvement Plan.  As Ms. Telfer and ARC's

28   counsel have discussed, the investigation of Marc Jackson in January 2007 was not based on and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    had no relation to any complaint of discrimination by Marc Jackson which is what Request for

2    Production No. 20 appears to pertain to. As counsel for the parties have also discussed, Jackson

3    never made an internal complaint of discrimination, and the first written complaint ARC received

4    was a DFEH Complaint Ms. Telfer, filed on behalf of Jackson on March 23, 2007. Prior to Ms.

5    Telfer filing Jackson's DFEH Complaint, ARC first became aware that he was claiming

6    discrimination when Ms. Telfer called ARC's Senior Counsel Chris Hansen claiming that the

7    disciplinary action issued to Jackson on February 22, 2007 was discriminatory.

8         In addition to being created in anticipation of litigation, the only documents in ARC's

9    possession custody or control which discuss Jackson's complaint of discrimination are privileged

10   communications between ARC employees and their in-house counsel Chris Hansen or between

11   ARC employees and ARC's outside counsel. As ARC's counsel previously discussed and agreed

12   with Plaintiff's counsel, ARC has prepared a privilege log to reflect these communications which

13   might be construed as responsive to Request for Production No. 20. (See Exhibit C). ARC has

14   responded to this request consistent with an agreement reached between counsel, and there is no

15   further action for the Court to compel.

16        E.      **FURTHER DEPOSITIONS OF STEVE BROWN AND ROBERT**

17                **BROWNING**

18        In their meet and confer call on May22, 2008, counsel for ARC advised Plaintiff's counsel

19   that ARC would cooperate in producing Brown and Browning at mutually convenient times and

20   locations in connection with questions which flow from the additional documents which ARC has

21   produced subsequent to Plaintiff deposing these individuals. ARC still intends to cooperate in

22   this manner; however, it must advise the Court, Plaintiff and his counsel that since the time of

23   counsels' meeting, Browning has left his employment with ARC, and so ARC may not be in a

24   position to obtain Browning's agreement to appear without a subpoena.

25   **V. CONCLUSION**

26        Because Plaintiff has failed to provide the authority required to compel ARC to produce

27   irrelevant documents and has failed to establish why attorney-client privilege or work product

28

1   protections should not be afforded to the documents withheld on these bases, ARC respectfully

2   request that the Motion to Compel be denied.

3

4                                                    Respectfully submitted,
    Dated:   June  6, 2008                           BAKER & HOSTETLER LLP
5

6

7                                                    _____
                                                     SABRINA L. SHADI
8                                                    Attorneys for Defendant
                                                     AMERICAN RED CROSS BLOOD
9                                                    SERVICES SOUTHERN CALIFORNIA
                                                     REGION, Improperly Sued As The American
10                                                   Red Cross and STEVE BROWN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

*Brian Setencich v. The American Red Cross, et al.*
Case No. C07-03688

Privilege Log of American Red Cross Regarding Request for Production No. 8

| Item No. | Date | Document | Privilege |
|---|---|---|---|
| 1 | 8/26/05 | Email Chain between Bob Browning, Marlene Zweig and Chris Hansen re Marc Jackson | Attorney-Client |
| 2 | 8/31/05 | Email from Marlene Zweig to Chris Hansen re Update on Marc Jackson | Attorney-Client/ Attorney Work Product |
| 3 | 8/31/05 | Email Chain between Chris Hansen, Marlene Zweig and Stephen Brown re Update on Marc Jackson | Attorney-Client |
| 4 | 8/31/05 | Email from Marlene Zweig to Chris Hansen re Letter from Marc Jackson's Doctor | Attorney-Client |
| 5 | 8/31/05 | Email from Marlene Zweig to Chris Hansen and Bob Browning re Letter from Marc Jackson's Doctor | Attorney-Client |
| 6 | 9/1/05 | Email Chain between Marlene Zweig and Chris Hansen re Letter from Marc Jackson's Doctor with final response from Bob Browning | Attorney-Client/ Attorney Work Product |
| 7 | 9/1/05 | Email Chain between Marlene Zweig and Chris Hansen re Letter from Marc Jackson's Doctor | Attorney-Client/ Attorney Work Product |
| 8 | 2/23/07 | Email Chain between Chris Hansen, Heather Kayne, John Browning, Barbara Kay, Stephen Brown and Gregory Ballish re Marc Jackson | Attorney-Client/ Attorney Work Product |
| 9 | 5/24/07- 5/29/07 | Email Chain between Heather Kayne, Chris Hansen John Browning and Stephen Brown re Physician Letter | Attorney-Client/ Attorney Work Product |
| 10 | 6/12/07 | Email Chain between Chris Hansen and John Browning re Marc Jackson | Attorney-Client/ Attorney Work Product |

15

EXHIBIT B

| John R. Browning, Jr. | April 23, 2008 |
|---|---|

Page 110

1  they're having difficulties.
2      A  Uh-huh.
3      Q  So I go to you and say, What am I supposed to do
4  at this point? I know this person is struggling. What
5  procedure should I follow with this employee to make sure
6  that we're following the reasonable accommodation of the
7  American Red Cross? What would you tell me to do?
8      A  **Call up Chris Hansen.**
9      Q  And who is Chris Hansen?
10     A  **Office of the general counsel. He's our field**
11  **liaison.**
12     Q  Is he an attorney?
13     A  **Yes.**
14     Q  So anytime an employee within the American Red
15  Cross blood services needs a reasonable accommodation,
16  they have to work with the in-house attorney, Chris
17  Hansen?
18     A  **No.**
19         MS. SHADI: Misstates testimony. Go ahead.
20         THE WITNESS: What I'm saying is that depends on
21  the degree of it, the degree of the situation. If there's
22  any question as to what is a reasonable accommodation or
23  what is an undue burden on the company, anything in there
24  like that, that's going to go to the office of general
25  counsel. If it's something that somebody says they need

| John R. Browning, Jr. | April 23, 2008 |
|---|---|

Page 111

1  to move their chair or it needs to be raised up a couple
2  inches and the safety department says yeah, that would
3  really help them out, we would just do that. That's an
4  accomodation. It depends on the complexity.
5  BY MS. TELFER:
6      Q  I understand that, but how do you ensure that
7  employees in the west division follow the reasonable
8  accommodation policy if no one knows what the procedures
9  are within the west division?
10         MS. SHADI: Argumentative. Go ahead.
11         THE WITNESS: The procedure is to try to make a
12  reasonable accommodation. If there's a question as to
13  whether or not the reasonable commendation puts an undue
14  burden on the company, then we go to legal counsel. If
15  it's something you can do for yourself, our policy says
16  that we have to do that, and we're going to do that.
17  BY MS. TELFER:
18     Q  I'll give you an example. Say that someone
19  has -- their doctor says they have some limitations. To
20  reasonably accommodate the individual, you need to know
21  what the exact limitations are and what is available to
22  the employee, so there's usually written policies and
23  procedures to follow, like a checklist, such as get
24  documentation, medical documentation, from the employee.
25  Two, see what alternatives are available if we're unable

| John R. Browning, Jr. | April 23, 2008 |
|---|---|

Page 112

1  to provide this and this. Three, the accommodations
2  available include special equipment, alternative
3  positions, et cetera.
4      Are there any type of written policies and
5  procedures that provide specifics so that employees within
6  the west division know what generally the procedure is to
7  follow?
8         MS. SHADI: I'm going to state an objection to
9  counsel's testimony regarding what is the normal procedure
10  or practice. You can answer that question.
11         THE WITNESS: No, there's not, to my knowledge.
12  There's no checklist, to my knowledge. If there is one, I
13  wouldn't be surprised, but there's none, to my knowledge.
14  The reason, we don't have policies and procedures on every
15  incident that can occur. There's some stuff that's common
16  sense that you're going to do to accommodate somebody's
17  situation like that. I don't see that that has to be
18  written out into a policy or a procedure. The only time
19  it gets dicey is when you have to determine whether or not
20  it's an undue burden on the company. That's when we go
21  get legal's interpretation.
22  BY MS. TELFER:
23     Q  How do you know what the best accommodation is
24  for the individual based on their limitations, then, if
25  there's no written procedure to follow? Are they supposed

| John R. Browning, Jr. | April 23, 2008 |
|---|---|

Page 113

1  to guess?
2      A  No.
3      Q  Okay. What procedure --
4      A  **You previously mentioned it. An interactive**
5  **discussion.**
6      Q  With who?
7      A  **The employee.**
8      Q  Anyone else?
9      A  **It depends on -- maybe somebody in ergonomics and**
10  **safety.**
11     Q  Is there a written policy that describes who may
12  be involved in the interactive process?
13     A  **I've already testified that there isn't any such**
14  **thing, to my knowledge.**
15     Q  Is job modification a potential reasonable
16  accommodation within the American Red Cross?
17     A  **I believe so.**
18     Q  Is there any written documentation that is
19  supposed to be filled out if an employee within the west
20  division requested accommodation during the time period
21  that you were the HR director?
22     A  **Not any form that I'm aware of. However, I'm**
23  **sure that there would be a notation made of it so that the**
24  **issue had been addressed.**
25     Q  What do you mean by notation?

17

6ff1a35e-e86a-4074-a56e-3aaf5a23198

EXHIBIT C

*18*

*Brian Setencich v. The American Red Cross, et al.*
Case No. C07-03688

Privilege Log of American Red Cross Regarding Request for Production No. 20

| Date | Document | Privilege |
|---|---|---|
| 3/15/07 | Email from Christian Hansen to Stephen Brown and John R. Browning, Jr. with copy to Gregory S. Ballish re Setencich complaint and issues raised regarding Marc Jackson | Attorney-Client / Attorney Work Product |
| 3/29/07 | Email from Heather Kayne to Christian Hansen re Jackson DFEH Charge | Attorney-Client |
| 3/29/07 to the present | Several emails between Christian Hansen to outside counsel Ronald Klepetar and/or Sabrina Shadi regarding Jackson DFEH Charge filed on March 14, 2007 and new DFEH charge filed on March 6, 2008 | Attorney-Client / Attorney Work Product |
| 4/4/07 | Email from Stephen Brown to Christian Hansen and John R. Browning, Jr. re Marc Jackson Lawsuit | Attorney-Client |
| 4/4/07 | Email from Christian Hansen to Stephen Brown to and John R. Browning, Jr. re Marc Jackson Lawsuit | Attorney-Client/ Attorney Work Product |
| 4/4/07 | Email From Nancy Penman on behalf of Stephen Brown to Christian Hansen and John R. Browning, Jr. re Marc Jackson DFEH charge | Attorney-Client |
| 4/4/07 | Email From Christian Hansen to Steve Brown and John R. Browning, Jr. re Marc Jackson DFEH charge | Attorney-Client / Attorney Work Product |

19

1

## PROOF OF SERVICE

2

3        I am employed in Los Angeles County, California.  I am over the age of eighteen years
and not a party to the within-entitled action.  My business address is 12100 Wilshire Boulevard,

4    15th Floor, Los Angeles, California  90025-7120.  On June 6, 2008, **OPPOSITION OF
AMERICAN RED CROSS BLOOD SERVICES SOUTHERN CALIFORNIA REGION TO**

5    **PLAINTIFF BRIAN SETENCICH'S MOTION TO COMPEL DEFENDANT AMERICAN
RED CROSS' FURTHER RESPONSES TO DEMAND FOR PRODUCTION** will be served

6    on the person(s) listed below:

7

8    ☒        via electronic mail by the United States District Court – Live System.

9    ☐        by placing the document(s) listed above in a sealed envelope and causing postage
              to be placed thereon, fully prepaid, in the United States mail at Los Angeles,

10             California, addressed as set forth below.

11   ☐        by causing the document(s) listed above to be personally delivered to the person(s)
              at the address(es) set forth below.

12

13       Jill P. Telfer, Esq.
         LAW OFFICES OF JILL P. TELFER

14       A Professional Corporation
         331 J Street, Suite 200

15       Sacramento, CA 95814
         Phone: (916) 446-1916

16       Fax: (916) 446-1726
         Email: jilltelfer@yahoo.com

17

18       I am readily familiar with the firm's practice of collection and processing correspondence
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

19   day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage

20   meter date is more than one day after date of deposit for mailing in affidavit.

21       I declare under penalty of perjury under the laws of the State of California that the above

22   is true and correct.

23       Executed on June 6, 2008, at Los Angeles, California.

24

25                                                            _____

26                                                            CHARLENE E. STAMPS

27

28

077975, 000039, 501906712.5

PROOF OF SERVICE

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES