JILL P. TELFER (State Bar No. 145450)
LAW OFFICES OF JILL P. TELFER
A Professional Corporation
331 J Street, Suite 200
Sacramento, California 95814
Telephone: (916) 446-1916
Facsimile: (916) 446-1726
email: jilltelfer@yahoo.com

Attorney for Plaintiff
**BRIAN SETENCICH**

UNITED STATED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SETENCICH<br><br>Plaintiff,<br><br>vs.<br><br>THE AMERICAN RED CROSS, a non-profit corporation; STEVE BROWN; ROBERT BROWNING; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No. C 07-03688 SBA<br><br>**PLAINTIFF'S REPLY TO DEFENDANT AMERICAN RED CROSS' OPPOSITION TO THE MOTION TO COMPEL DEFENDANT'S FURTHER RESPONSES TO PLAINTIFF'S DEMAND FOR PRODUCTION OF DOCUMENTS**<br><br>Date:  July 2, 2008<br>Time:  1:00 p.m.<br>Ctrm:  G<br>Judge: Hon. Bernard Zimmerman |

I.

INTRODUCTION

Defendant American Red Cross ("ARC") opposes the motion of Plaintiff Brian Setencich ("Setencich") to Compel Further Responses and Production of Documents to Plaintiff's Request for Production of Documents, Set One served on ARC on February 12, 2008. The opposition consists of ARC arguing that it now has produced all responsive documents except for: (1) the investigative file(s) concerning Marc Jackson[1] which it contends is not relevant and an attempt by Plaintiff's counsel to conduct discovery for a potential case for Marc Jackson, (2) documents concerning ARC's failure to

///

///

---

[1] Request for Production No. 1

1

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO COMPEL

reasonably accommodate Marc Jackson[2], because they are allegedly not relevant and protected under the attorney client and work product privileges, and (3) documents concerning any investigation involving Jackson's complaint(s) of discrimination because they are attorney client and work product privileged.

ARC has <u>not</u> produced all relevant and responsive documents. There still exists a Requisition for Personnel for the re-hiring of felon Angie Turner executed approximately six months after Defendants refused to hire Setencich which is responsive to Request No. 2. Setencich is informed and believes that Defendant Steve Brown and Robert Browning, the decision-makers on the denial of hire for Setencich, signed the requisition approving of Ms. Turner's hire. This document will prove the articulated business reason for not hiring Setencich was pretextual. The investigative file concerning Jackson's performance which led to his discipline in 2007 and the failure to reasonably accommodate Jackson's disability are probative of ARC's defense that it had no discriminatory animus against Setencich for association discrimination and Jackson for disability discrimination. Documents responsive to Request No. 8 are not privileged since they involve communications with in-house counsel as to day-to-day business of when to accommodate employees and when to deny said requests. Setencich does not seek to compel the documents responsive to Request No. 20 identified in the privilege log produced by ARC June 6, 2008, since they do appear to be privileged.

## II.

## FACTS OF THE CASE

ARC's Statement of Factual Background Regarding Plaintiff's Case leaves out important information so that it is misleading. In particular, ARC states on July 1, 2008, Defendant Steve Brown advises Jackson by e-mail ARC would not hire Setencich due to his felony conviction and reiterated that decision on February 21, 2006. (Def. P&A, 3:10-13.) However, during the interim of those two dates, on September 9, 2005, after Jackson complained about the denial of reasonable accommodation, Defendant Steve Brown promised to interview Setencich to give him a "fair shake." (See Exh. 3, pg. 2.) Steve Brown never got back to Jackson after the interview, so Jackson proceeded with executing the paperwork to hire Setencich. (Exh. 4, 125:18-24, 126:17-127:11.)

---

[2] Request for Production No. 8

ARC also claims in its opposing papers that it initiated an investigation of Jackson based on complaints from his subordinates. (Def. P&A, 3:14-16.) But Jackson's subordinates shared with him they felt as though they had a good working relationship (Exh. 4, 147:15-18) and they were concerned because HR was trying to twist their words around during the interviews in the investigation. (Exh. 4, 145:3-146:18.) Jackson was never told who complained (other than a photographer after Jackson discovered she was stealing) or the specifics as to the basis for the "complaints". (Exh. 4, 149:8-150:22.)

ARC also stated in the opposition papers in 2005 ARC granted Jackson's request to work at home and allowed him to do so for several months. (Def. P&A, 9:6-9.) However, Jackson testified that ARC did not accommodate him. (Exh. 4, 118:12-119:15.) Most telling, ARC informed Jackson they could not accommodate him because Jackson's staff needed supervision. In the past, Communication Manager Julie Julisson had performed this job. Had Jackson been allowed to hire a Communication Manager, such as Setencich, upon Ms. Julisson's departure ARC would have been able to accommodate Jackson. (Exh. 4, 155:6-24.)

## III.

## LEGAL ANALYSIS OF THE DISPUTED DISCOVERY

A. **Request for Production No. 1:**

1. **The Requested Documents are Probative of the Claims and Defenses**

ARC contends the investigative file that led to Jackson's discipline is not relevant because it does not relate to any party's claim or defense. However, Setencich's First Amended Complaint ("Complaint") alleges[3]

> **Jackson,** as the director of Public Affairs and Communications, since 1997, has won a multitude of national awards for the work that he has performed for the defendants. When defendants learned of Jackson's condition of psoriatic arthritis, which is a chronic condition protected under . . . ("FEHA"), it has **discriminated** against him, **denied reasonable accommodation and are attempting to force him into quitting**....(Exh. 1, Complaint ¶ 3.) (*Emphasis added.*)

---

[3] Setencich requests the Court take judicial notice of said pleading under FRE 201. Exhibit 1.

ARC, in its answer filed on March 26, 2008 denies the allegation.[4] Specifically, in paragraph 3, **ARC denies it discriminated against Jackson, denies it failed to reasonably accommodate him, and denies it is attempting to force Jackson to quit.** (Exh. 2.,) (*Emphasis added.*) Therefore, documents which dispute that denial and corroborate Setencich's claims, such as an investigative file that led to discipline of Jackson is relevant.

> Setencich further alleges each **Defendant had a discriminating animus against Jackson because of his disability, . . . and developed a discriminatory animus against Setencich when they learned of his association with Jackson.** (Exh. 1, Complaint ¶ 8.)

ARC denies it had a discriminatory animus against Jackson or Setencich. (Exh. 2, ¶ 8.)

> Jackson needed the assistance of a Communication Manager to accommodate not only his disability, but the growth of the department and to counter the attempts of the defendants to undermine him and set him up to fail. Jackson found plaintiff to be the most qualified for the position, as did those on the hiring panel.
>
> **Once Defendants . . . learned that Marc Jackson wanted to hire plaintiff, they withdrew their support because of their discriminatory and retaliatory animus against Jackson. Defendants articulated a pretextural reason for not hiring Setencich.** (Exh. 1, Complaint ¶16 and 17.)

ARC denies the allegations in paragraph 16 and 17 of its answer. (Exh. 2.) As a result, the investigative file of Jackson is relevant and should be produced.

The *McDonnell Douglas* analysis for this discrimination claims is:

(1) Setencich must establish a prima facie case of discrimination:

    (a) plaintiff is a member of a protected class;

    (b) qualified for the position; and

    (c) denied hire

(2) burden shifts to ARC to articulate legitimate, non-discriminatory reason for not hiring Setencich (i.e. felony conviction); and

(3) burden shifts back to Setencich to prove employer's reason (felony conviction) is pretext.

(*McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802-804 (1973).)

Since ARC disputes discrimination against the disabled, and Jackson in particular, Setencich will

---

[4]Setencich requests the Court take judicial notice of said pleading under FRE 201. Exhibit 2.

1  have to provide some evidence to the jury of a discriminatory animus against Jackson.

2  ARC contends that there is no requirement for Setencich to establish ARC discriminatory animus against Jackson and as a result the document request is not relevant. ARC states this presumption is reflected in Judge Armstrong's reliance on two Supreme Court cases namely, *Harris v. Capitol Growth Investors IXV,* 52 Cal.3d 1142, 1152 (1991) and *In re Cox,* 3 Cal.3d 205 (1970) in her Order on ARC's Motion to Dismiss. This is misleading and not accurate. Judge Armstrong's Order denying ARC's motion to dismiss did rely on several cases and the Unruh Act when holding that an association discrimination claim under FEHA can be alleged because of an association which is not family related.

The cases cited by Judge Armstrong, identified in ARC's opposing papers, involve the sufficiency of pleading and the extent of protections under the law. In particular, in *Harris*, the Supreme Court held that the Court of Appeal incorrectly determined plaintiff's complaint stated a cause of action for economic discrimination in violation of the Unruh Act. In particular, the trial court sustained without leave to amend defendant's general demurrer. Where the plaintiffs alleged defendant's minimum income requirement was arbitrary economic discrimination when deciding whether or not to rent office buildings to the plaintiffs. No where in *Harris* did the court explain the burden of proof for association discrimination and therefore the case is not probative of the issues here.

The petitioner sought a writ of habeas corpus in the case of *In re Cox,* after Cox was arrested and charged with violating municipal trespass ordinances when visiting a shopping center. In particular, petitioner was going through a shopping center intending to make a purchase and ran into a friend who wore long hair and dressed in an unconventional manner. They were approached by a security guard and ordered to leave the premises. Petitioner refused to do so and after purchasing a soft drink sat on a communal bench provided by the shopping center for patrons, whereupon he and his friend were arrested by the police. The ordinance under which he was charged provided "no person shall remain upon on any business premises after being notified to be removed" excluding from its application discrimination. This case also did not provide guidance on the requisite showing for association discrimination.

ARC also makes reference to Judge Armstrong's reliance of the case in *Winchell v. English* 62 Cal.App.3d 124 (1976) when ruling on the Motion to Dismiss. In *Winchell*, the trial court also dismissed appellant's complaint after sustaining respondent's demurrer. The Court of Appeal reversed the holding

that the Unruh Act prohibited discrimination of persons because of their association with disfavored persons, in that case with blacks. Specifically, Appellant's alleged discrimination against the operators of the mobile home court because they refused to allow the appellants to sublease to minorities.

In *Winchell*, there was blanket rule by the mobile home operators that the tenants could not sublease to blacks. In the present matter, ARC has not given a blanket order that all disabled individuals are not allowed to hire individuals who will assist them in doing their job. Since there is not blanket order or policy, but instead disparate treatment of one individual, Setencich will need to provide evidence of a discriminatory animus against Jackson because of his disability for a jury to find association discrimination against him.

ARC also makes note the investigation of Jackson took place in late 2006 and early 2007, after Setencich was denied a position. It fails to provide any authority such evidence is not discoverable. If an employer exhibits an underlying discriminatory animus, such animus does not go away after one year. An employer's conduct tending to demonstrate hostility or animus towards a certain group is relevant and admissible where the employer's general animus against the group is a motivating reason behind an adverse action taken against a member of the group. (*Heyne v. Caruso* (9th Cir. 1995) 69 F.3d 1475, 1479.) Recognizing that "there will seldom be 'eye witness' testimony as to the employer's mental processes," the United States Supreme Court held the evidence of the employer's discriminatory attitude in general as relevant and admissible to prove discrimination. (*U.S. Postal Service Board of Governors v. Aikens* (1983) 460 U.S. 711, 716.) Evidence of prior acts of discrimination is relevant to an employer's motive, even when the evidence is not extensive enough to establish discriminatory animus by itself. (*Estes v. Dick Smith Food, Inc.* (8th Cir. 1988) 856 F.2d 1097, 1104.) As a result, subsequent acts exhibiting discrimination should be discoverable.

**B.    Request for Production No. 2:**

ARC contends it has produced all responsive documents and that it will reveal the name of the other candidates with felonies who were hired if a protective order is agreed upon. However, the personnel request form, similar to Exhibit 5 has not been produced for Angie Turner. Brown and Browning both testified that a Personnel Requisition is filled out for all changes in personnel status including rehire. The document will prove disparate treatment by the decision-makers, Brown and

Browning regarding Setencich. Namely, the articulated business reason for not hiring Setencich was because he had a felony conviction for tax evasion, however, six months after denying him the position they approved of the re-hire of a heroine smuggling felon, Angie Turner

### C. Request for Production No. 8:

ARC produced a privilege log on June 6, 2008, identifying that all documents identified are protected under the attorney client and/or attorney work product privilege. The log identifies documents generated from August 20, 2005 to June 12, 2007. The lawsuit was not filed until March 8, 2007. The DFEH charge for Setencich was served by mail to the Red Cross on **March 26, 2007.** Mr. Jackson's was served by mail on March 27, 2007. Prior to March 8, 2007, no litigation was anticipated and therefore all of the documents below should be produced.

| Date | Description |
|---|---|
| 8/26/05 | Email Chain between Bob Browning, Marlene Zweig and Chris Hansen re Marc Jackson |
| 8/31/05 | Email from Marlene Zweig to Chris Hansen re Update on Marc Jackson |
| 8/31/05 | Email Chain between Chris Hansen, Marlene Zweig and Stephen Brown re Update on Marc Jackson |
| 8/31/05 | Email from Marlene Zweig to Chris Hansen re Letter from Marc Jackson's Doctor |
| 8/31/05 | Email from Marlene Zweig to Chris Hansen and Bob Browning re Letter from Marc Jackson's Doctor |
| 9/1/05 | Email Chain between Marlene Zweig and Chris Hansen re Letter from Marc Jackson's Doctor with final response from Bob Browning |
| 9/1/05 | Email Chain between Marlene Zweig and Chris Hansen re Letter from Marc Jackson's Doctor |
| 2/23/07 | Email Chain between Chris Hansen, Heather Kayne, John Browning, Barbara Kay, Stephen Brown and Gregory Ballish re Marc Jackson |

The burden of proving that privilege applies lies with the party asserting privilege. (*Weil v. Investment/Indicators Research and Management*, 647 F.2d 18, 25 (9th Circuit 1981).) The attorney-client privilege protects communications not underlying evidence. Communication between a corporation and its outside counsel are presumed to be made for the purpose of seeking legal advice. However, unlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day-to-day business activities and frequently serve as integral players in business decisions or activities. (*United States v. Chevron Texaco Corporation*, 241 F.Supp.2d 1065, 1067 (N.D. Cal. 2002).) Accordingly, communication involving in-house counsel might well pertain to business rather than legal matters, which is in the present case. The privilege does not protect an attorney's business advice.

As explained in *In re Fishchel*, 557 F. 2d 209, 211 (9th Cir. 1977) corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. In the present matter, HR Director Robert Browning testified that all reasonable accommodations other than ones that could simply be instituted, were run through the in-house counsel Chris Hansen. This is a day-to-day potential personnel action where ARC can not hide behind the privilege to keep secret the evidence of the failure to reasonably accommodate. Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel. (*United States v. Chevron Texaco Corporation, supra.* at 1076.) With respect to internal communication involving in-house counsel, *Chevron* must make a clear showing that the speaker made the communication for the purpose of obtaining or providing legal advice. (*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984).) ARC has failed to do so. In *United States v. Chevron Texaco Corp.*, the Court held that in the context of attorney-client privilege, when an attorney not only served as legal advisor but also helped implement a transaction, Courts cannot simply assume that every communication involving in-house counsel that related to the transaction was made for the primary purpose of securing legal advice.

A company asserting a work product privilege bears the burden of establishing that the materials it seeks to protect are documents prepared "in participation of litigation" by or for the company or the company's representatives. (FRCP 26(b)(3), (5).) If the company demonstrates that the protections afforded by the work product doctrine extend to the documents it has withheld, when they overcome the doctrine's qualified immunity, if it can show that it has substantial need for the documents and is unable to otherwise obtain this substantial equivalent of the withheld materials without undo hardship. (FRCP 26(b)(3).)

Here, no litigation occurred prior to March 8, 2007. ARC contends in its opposition papers on February 23, 2008, it thought Jackson might file a lawsuit, however it fails to provide any evidence to support the assertion.

Under the "primary motivating purpose" test the work product doctrine extends to a document only if a primary motivating purpose behind the creation of document was to aid in future litigation. (*United States v. Davis*, 236 F.2d 1028, 1040 (5th Circuit 1981).) A document would have been

generated in the normal course of business even if no litigation was anticipated, can not be protected under the work product privilege. (*United States v. Chevron Texaco Corp., supra.* at 1083.) Documents concerning the decision to not reasonably accommodate Jackson would have been generated whether or not a lawsuit was filed and there should not be afforded protection from disclosure.

## V.
## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court order ARC to: serve further verified answers to Request for Production of Documents, No. 1, 2, and 8 identifying all responsive documents have been produced; (2) produce the investigative file(s) of HR Consultant Marlene Zweig (Request No. 1); (3) produce the Personnel Requisition for the re-hire of Angie Turner and disclose the names of the employees who were hired with felony convictions; (4) produce all documents responsive to Request No. 8, including the first eight on the privilege log.

Dated: June 12, 2008                    Respectfully submitted,

                                        **LAW OFFICES OF JILL P. TELFER**
                                        A Professional Corporation

                                        _____
                                        JILL P. TELFER
                                        Attorney for Plaintiff **BRIAN SETENCICH**

**PROOF OF SERVICE**

CASE: *Brian Setencich v. The American Red Cross, et al.;* United States District Court of California, Northern District

CASE NO: **C 07-03688 SBA**

I, the undersigned, declare I am a citizen of the Unites States and am employed in the County of Sacramento, State of California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 331 J Street, Suite 200, Sacramento, CA 95814.

I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date indicated below, I served the following documents by:

to be served on the party(ies) or their (its) attorney(s) of record in this action:

[X]  Via Mail: I caused each envelope (with postage affixed thereto) to be placed in the U.S. mail at Sacramento, California.

[ ]  Via **CERTIFIED** Mail: I caused each envelope (with postage affixed thereto) to be placed in the U.S. mail at Sacramento, California.

[ ]  Via Personal Service: I instructed each document to be hand-delivered via **HAND DELIVERY** to the address listed below.

[ ]  Via Overnight Courier: I caused each envelope to be delivered via overnight mail by **FEDERAL EXPRESS**.

[X]  Via **FACSIMILE**: I instructed such to be transmitted via facsimile to the office(s) list below.

**DOCUMENTS SERVED:  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT REPLY TO DEFENDANTS' OPPOSITION OF MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION, SET ONE**

ADDRESSED TO :

Sabrina L. Shadi, Esq.
BAKER & HOSTETLER
12100 Wilshire Blvd., 15th Floor
Los Angeles, CA 90025-7120

I declare under penalty of perjury that the foregoing is true and correct. Executed June 12, 2008, at Sacramento, California.

Camille Rasmussen

PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO COMPEL